MOUND, COTTON, WOLLAN & GREENGRASS
Philip C. Silverberg (PS-8110)
Mark S. Katz (MK-7200)
William D. Wilson (WW-6482)
60 Park Place
Newark, New Jersey 07102
973-242-2050
Attorneys for Plaintiff
Zurich American Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------x

ZURICH AMERICAN INSURANCE COMPANY,

         Plaintiff,

    -against-

KEATING BUILDING CORPORATION, AZTAR
CORPORATION, and ADAMAR OF NEW JERSEY, INC.
d/b/a TROPICANA CASINO AND RESORT,

         Defendants.

------------------------------------------------------------x

Civil Action No.

**COMPLAINT FOR DECLARATORY RELIEF AND JURY DEMAND**

Plaintiff, Zurich American Insurance Company ("Zurich"), by its undersigned counsel, for its complaint against defendants Keating Building Corporation ("Keating"), Aztar Corporation ("Aztar"), and Adamar of New Jersey, Inc. d/b/a Tropicana Casino and Resort ("Adamar"), alleges as follows:

## INTRODUCTION

1. This is a declaratory judgment action pursuant to 28 U.S.C. §2201 and is brought under Rule 57 of the Federal Rules of Civil Procedure to determine the respective rights and obligations of the parties under a first-party property insurance contract issued by Zurich to Aztar and Adamar.

## PARTIES

2. Plaintiff Zurich is an insurance company incorporated and existing under the laws of the state of New York with its principal place of business in Schaumburg, Illinois.

3. Defendant Aztar is a gaming company organized and existing under the laws of the state of Delaware with its principal place of business in Phoenix, Arizona.

4. Defendant Aztar conducts business in the state of New Jersey and owns and/or operates the Tropicana Casino and Resort in Atlantic City, New Jersey.

5. Defendant Adamar is a subsidiary of Aztar organized and existing under the laws of the state of New Jersey with its principal place of business in either Atlantic City, New Jersey or Phoenix, Arizona.

6. Defendant Adamar conducts business in the state of New Jersey and owns and/or operates the Tropicana Casino and Resort in Atlantic City, New Jersey.

7. Defendant Keating is a contracting and construction management company organized and existing under the laws of the state of Pennsylvania with its principal place of business in Pennsylvania.

8. Defendant Keating conducts business in the state of New Jersey and was engaged by Aztar and/or Adamar to undertake a construction project at the Tropicana Casino and Resort in

Atlantic City, New Jersey consisting of a new hotel tower, parking garage, retail space, and other related facilities (the "Project").

## JURISDICTION AND VENUE

9. This Court possesses original jurisdiction pursuant to 28 U.S.C. §1332(a)(1) inasmuch as there is diversity of citizenship between plaintiff and defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is properly placed in the United States District Court, District of New Jersey pursuant to 28 U.S.C. § 1391 inasmuch as the events giving rise to this claim occurred in this district and all defendants reside in this district.

## FACTS

11. Zurich issued Completed Value Builders Risk Policy IM 3709810, effective April 22, 2002 through February 22, 2004 (the "Policy") to Aztar and Adamar providing coverage for the Project, subject to the Policy's terms, provisions, conditions, and endorsements.

12. Keating is an Additional Insured with respect to certain, but not all, coverages provided by the Policy.

13. On or about October 30, 2003, a portion of the parking garage at the Project collapsed during construction (the "Garage Collapse").

14. The debris of the Garage Collapse remained resting on and/or hanging from the undamaged portion of the garage several stories above ground level.

15. Keating submitted a claim to Zurich under the Policy for loss and/or damage it contends it suffered as a result of the Garage Collapse (the "Claim").

16. The Claim seeks recovery under the Policy for, inter alia, costs of removing the debris of the collapsed section of the parking garage ("Debris Removal Costs"); costs incurred to remove building materials from the Project damaged by mold growth ("Mold Damage"); costs incurred to remove building materials from the Project damaged by water and/or moisture infiltration ("Water Damage"); and consequential loss, damage, and expense ("Consequential Loss") sustained by subcontractors engaged by Keating which Consequential Loss allegedly resulted from the delay in completion of the Project following the Garage Collapse ("Delay Losses").

17. While Zurich has to date made advance payments to defendants totaling $10 million for the Claim and anticipates making additional payments, it disputes the extent to which the Policy provides coverage for Debris Removal Costs, Mold Damage, Water Damage, as well as Consequential Loss incurred and/or experienced by the subcontractors engaged by Keating.

18. Accordingly, critical issues exist concerning the nature and extent of Zurich's obligations under the Policy, and Zurich brings this declaratory judgment action to resolve these issues.

## THE INSURANCE POLICY

19. The Policy provided coverage to Keating as an Additional Insured for, inter alia, "direct physical loss of or damage to" certain property as more particularly defined and described in the Policy, a copy of which is annexed hereto as Exhibit A.

20. The Policy states under section 5.B.(9) of the Declarations, Sublimits of Liability, in pertinent part, as follows:

> The Company shall not be liable for more than the following sublimit(s) of liability in any one OCCURRENCE* (NOTE: coverage

shall only apply when a value is entered for individual sublimits below):

* * *

(9) __25%__ of the amount of insured physical loss or damage- Debris Removal

21. The Policy states under section 3, Extensions of Coverage, paragraph (G), Debris Removal, in pertinent part, as follows:

> 3. **EXTENSIONS OF COVERAGE**:
>
> * * *
>
> G. **DEBRIS REMOVAL:**
>
> Subject to the SUBLIMIT OF LIABILITY stated under paragraph 6.B.(9) [Sic] of the DECLARATIONS, in the event of direct physical loss or damage insured hereunder and occurring during the policy period, the Company will pay the following necessary and reasonable costs:
>
> (1) costs to remove debris being an insured part of the property from the project location of the insured;

22. The Policy states in Endorsement 3, Mold & Fungi Exclusion, in pertinent part, as follows:

> The policy is amended as follows:
>
> 1. Under the <u>Definitions</u> section of the policy, the term **CONTAMINANTS OR POLLUTANTS*** is extended to also include the following additional meaning:
>
>    A. The term **CONTAMINANTS OR POLLUTANTS*** for this policy shall mean any form of Fungi, any form of Fungus, including but not limited to yeast, mold, mildew, rust, smut, mushrooms, spores, mycotoxins, odors, or any other substances, products or byproducts produced by, released by, or arising out of the current or past presence of Fungi. Fungi

        does not include a Fungus that was deliberately grown for Human consumption.

        * * *

2.   Under the <u>Exclusions</u> or <u>Perils Excluded</u> section(s) of the policy, the following additional exclusion applies:

        This policy shall not pay for loss, damage or expense caused directly or indirectly and/or contributed to, in whole or in part, by any of the following excluded perils:

        A.   Fungi resulting directly or indirectly from any cause;

        B.   the cost to test for, monitor, or assess the existence, concentration, or effects of Fungi; or

        C.   the costs to clean up, remove or re-mediate against Fungi.

        This exclusion shall apply regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

23.   The Policy states under section 6(A) of the Declarations, Deductibles, in pertinent part, as follows:

        From the amount of each claim for Insured loss or damage arising out of any one OCCURRENCE, there shall be deducted the applicable amount shown below. . .

        A.   $1,000,000 physical loss or damage. . . .

24.   The Policy defines OCCURRENCE under Part C- Definitions, paragraph 7, in pertinent part, as follows:

        . . . an accident, incident, or a series of accidents or incidents arising immediately out of a single event or originating cause and includes all resultant or concomitant losses wherever located.

25. The Policy states in Part B - EXCLUSIONS AND LIMITATIONS, in pertinent part, as follows:

**PERILS EXCLUDED:**

1. This policy shall not pay for loss, damage or expense caused directly or indirectly and/or contributed to, in whole or in part, by any of the following excluded perils except as specifically allowed in A, B, C, D, E(3), F or J below:

   A. Consequential loss, damage or expense of any kind or description including but not limited to loss or delay, . . . delay in completion. . . whether caused by a peril insured or otherwise, however, the forgoing shall not exclude Delay in Completion Coverage when it is endorsed to this policy.

26. The Policy states in the Delay In Completion Endorsement - Declarations, in pertinent part, as follows:

   For the purpose of this endorsement only, the Named Insured, if different from that shown on he policy declarations, shall be as shown in the declarations of this endorsement. There shall be no Additional Insureds hereunder.

   NAMED INSURED:        AZTAR Corporation, including Adamar of New Jersey, Inc.
   BUSINESS ADDRESS:     2390 East Camelback Road, Suite 400 Phoenix, Arizona 85016-3452

27. The Policy states in the Delay In Completion Endorsement - INSURING AGREEMENT, in pertinent part, as follows:

   1. Subject to all terms, conditions, limitations and exclusions of this Endorsement, and of the Policy to which it is attached, in the event of direct physical loss or damage insured under this Policy, coverage is hereby extended to include SOFT COSTS/ADDITIONAL EXPENSES*, Loss of RENTAL INCOME*, and/or Loss of GROSS EARNINGS* arising out of the resulting DELAY* in completion of the project described in the Declarations portion of this Policy, or as amended by Endorsement, on an actual loss sustained basis.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

### DEBRIS REMOVAL COSTS
### ARE SUBJECT TO THE DEBRIS REMOVAL SUBLIMIT

28. Zurich repeats and realleges the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29. Following the October 30, 2003 Garage Collapse, Keating engaged Brandenburg Industrial Services Company ("Brandenburg") to undertake the removal of the debris of the collapsed portion of the parking garage.

30. The debris removal as proposed by Keating and/or Brandenburg involves various Debris Removal Costs including, but not limited to, costs for the erection of a platform to support machinery, shoring certain portions of the Project, breaking up the debris and lowering it to ground level, and carting the debris from the Project location.

31. The Debris Removal Costs for the work proposed by Keating and/or Brandenburg is estimated by Keating to exceed $12,000,000.

32. All of the Debris Removal Costs, including but not limited to those detailed in paragraph 30 above, constitute "costs to remove debris" and are subject to the "25%" debris removal sublimit set forth in paragraphs 20 and 21 above.

33. The total Debris Removal Costs as estimated by Keating will exceed the "25%" sublimit.

34. Keating contends that certain costs incurred to remove the debris of the collapsed portion of the parking garage (that are included in its $12,000,000 plus estimate set forth in paragraph 31 above), such as the costs to break up the debris and bring it to ground level, the costs

-8-

to shore up certain portions of the Project, and costs to erect a platform to support machinery, are not subject to the "25%" debris removal sublimit.

35. By virtue of the foregoing, there is an actual justiciable controversy in a sum exceeding $75,000 as to the rights and obligations of plaintiff and defendants under the Policy and plaintiff is, accordingly, entitled to a declaration concerning the matters at issue.

## SECOND CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

### THE MOLD DAMAGE IS NOT COVERED

36. Zurich repeats and realleges the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. During the course of construction of the hotel tower, prior to and after the Garage Collapse, proper steps were not taken to secure the Project from the elements, which allowed water and/or moisture to repeatedly and continuously infiltrate the Project through openings in the roof, walls, and facade thereby coming into contact with building materials.

38. During the course of construction of the hotel tower, prior to and after the Garage Collapse, it was known and expected by defendants that water and/or moisture would repeatedly and continuously infiltrate the Project through openings in the roof, walls, and facade and would thereby come into contact with building materials.

39. The repeated and continuous infiltration of water and/or moisture into the Project through openings in the roof, walls, and facade, prior to and after the Garage Collapse, caused Mold Damage.

40. The Claim submitted by Keating includes costs associated with Mold Damage.

41. The Mold Damage is excluded from coverage under the Policy by the Mold & Fungi Exclusion set forth in Endorsement 3.

42. By virtue of the foregoing, there is an actual justiciable controversy in excess of $75,000 as to the rights and obligations of plaintiff and defendants under the Policy and plaintiff is, accordingly, entitled to a declaration concerning the matters at issue.

## THIRD CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

### THE MOLD DAMAGE AROSE FROM SEPARATE AND/OR MULTIPLE OCCURRENCES

43. Zurich repeats and realleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. The Mold Damage that occurred before and/or after the Garage Collapse did not arise out of the Garage Collapse.

45. The Mold Damage, to the extent covered by the Policy, constitutes a separate and/or multiple "occurrence(s)" as defined by the Policy and is subject to the application of a separate and/or multiple deductible(s).

46. By virtue of the foregoing, there is an actual justiciable controversy in excess of $75,000 as to the rights and obligations of plaintiff and defendants under the Policy and plaintiff is, accordingly, entitled to a declaration concerning the matters at issue.

## FOURTH CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

### THE WATER DAMAGE CONSTITUTES
### SEPARATE AND/OR MULTIPLE OCCURRENCES

47. Zurich repeats and realleges the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. The repeated and continuous infiltration of water and/or moisture into the Project through openings in the roof, walls, and facade, prior to and after the Garage Collapse, caused Water Damage.

49. The Water Damage that occurred before and/or after the Garage Collapse did not arise out of the Garage Collapse.

50. The Water Damage, to the extent covered by the Policy, constitutes a separate "occurrence" and/or multiple "occurrences" as defined by the Policy and is subject to a separate and/or multiple deductible(s).

51. By virtue of the foregoing, there is an actual justiciable controversy in excess of $75,000 as to the rights and obligations of plaintiff and defendants under the Policy and plaintiff is, accordingly, entitled to a declaration concerning the matters at issue.

## FIFTH CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

### THE CLAIMED DELAY LOSSES ARE NOT COVERED

52. Zurich repeats and realleges the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53. Keating's Claim to date includes Consequential Loss in excess of $75,000 allegedly incurred and/or experienced by subcontractors.

54. The Consequential Loss is a Delay Loss.

55. Coverage for the Delay Losses is excluded by Part B - EXCLUSIONS AND LIMITATIONS, paragraph 1(A), as set forth in paragraph 25 above.

56. The only entities that can recover under the Delay in Completion Endorsement under the Policy are Aztar and Adamar.

57. The Delay Losses contained in Keating's Claim were not incurred and/or experienced by Aztar or Adamar and, therefore, are not covered under the Policy.

58. By virtue of the foregoing, there is an actual justiciable controversy in excess of $75,000 as to the rights and obligations of plaintiff and defendants under the Policy and plaintiff is, accordingly, entitled to a declaration concerning the matters at issue.

### STATEMENT REGARDING UNKNOWN CIRCUMSTANCES

59. This complaint reflects Zurich's understanding of relevant circumstances as of the time of the filing. As additional information becomes available, it may be appropriate for Zurich to supplement and/or amend its Complaint.

**WHEREFORE**, Zurich prays that this Court:

1. Declare the respective rights, duties and obligations of the parties with respect to Keating's Claim under the Policy for alleged loss arising out of the garage Collapse.

2. Enter judgment in favor of Zurich that the costs incurred by Keating for removing the debris of the Garage Collapse, including but not limited to the costs to break up the debris and bring it to ground level, shoring certain portions of the Project, and the

erection of a platform to support machinery, constitute "costs to remove debris" and are subject to the "25%" debris removal sublimit.

3. Enter judgment in favor of Zurich that it has no liability under the Policy for Mold Damage to building materials as contained in Keating's Claim.

4. Enter judgment in favor of Zurich that it has no liability under the Policy for Water Damage to building materials as contained in Keating's Claim.

5. Enter judgment in favor of Zurich that it has no liability under the Policy for Delay Losses incurred and/or experienced by entities other than Aztar and Adamar.6.

Afford such other relief as it deems necessary and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues triable as of right by a jury.

> MOUND, COTTON, WOLLAN & GREENGRASS
> Attorneys for Plaintiff
>
> By: _____
> Philip C. Silverberg (PCS-8110)
> Mark S. Katz (MSK-7200)
> William D. Wilson (WDW-6482)

Dated: March 30, 2004